IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD WARGO,<br><br>Plaintiff,<br><br>v.<br><br>CHAOYUN COMMERCE, et al.,<br><br>Defendants. | Civil Action No. 26-cv-190<br><br>(Judge Horan) |

**RENEWED MOTION FOR ALTERNATIVE SERVICE**

The Court previously denied the motion for alternative service filed by Plaintiff Edward Wargo ("Wargo") (ECF No. 43), stating, "Plaintiff has not sufficiently provided information that would excuse Plaintiff from compliance with the Federal Rules of Civil Procedure and/or Hague Convention. Formal service of process must comply with the Federal Rules of Civil Procedure and/or Hague Convention as indicated in Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi, 164 F.4th 164 (2d Cir. 2025)." (ECF No. 46).

**BACKGROUND**

There are 325 active defendants remaining in this case, 268 of whom appear to be located in China and 57 of whom appear to be located in Hong Kong.[1] In Smart Study, the Second Circuit held that an email sent to a defendant abroad can constitute service of process subject to the Hague Service Convention and that where the Convention applies to a defendant in China it forecloses service by email because China has objected to service under Article 10(a). But the convention "shall not apply where the address of the person to be served with the document is

[1] The case started with 382 defendants. 44 defendants have been dismissed. (ECF Nos. 21, 26, 27, 30, 31, 32 and 44.) 13 additional defendants have been resolved.

not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362. Smart Study did not address service on defendants in Hong Kong, and Hong Kong has not made an objection to service by email. Wargo has developed evidence establishing that the addresses of all but 20 defendants located in the People's Republic of China are not known within the meaning of Article 1 of the Hague Service Convention. The Convention therefore does not apply to these defendants, and service by electronic mail is proper. As to the 20 defendants whose addresses Wargo has identified, Wargo will proceed with service under the Hague Convention.

## ARGUMENT

### 1. Plaintiff's Investigation as to China-Based Defendants.

The People's Republic of China has objected under Article 10(a) of the Hague Service Convention to service through postal channels. Accordingly, in order to support alternative service as to the China-based defendants, Wargo must demonstrate that their addresses are unknown.

In *Smart Study*, the district court concluded that the addresses of 49 of the 51 defendants remained unknown after a diligent investigation and authorized alternative service by email on them; the appeal concerned only the two remaining defendants. To demonstrate that the addresses of those 49 defendants were unknown, the plaintiff investigated each defendant's address on one search engine, baidu.com, and two Chinese business databases, QiChaCha (qcc.com) and the National Enterprise Credit Information Publicity System. (21-cv-5860, ECF No. 109 at ¶¶ 6-9.) All of the information displayed on QiChaCha is sourced from official websites such as the National Enterprise Credit Information Publicity System, China National Intellectual Property Administration, China Judicial Documents Website, and other official websites. (*Id.* at ¶ 8.) The National Enterprise Credit Information Publicity System is the

official government corporate registry and verification platform managed by China's State Administration for Market Regulation. (https://www.chinajusticeobserver.com/a/what-is-china-s-national-enterprise-credit-information-publicity-system, last visited Nov. 16, 2026.) The conclusions of the plaintiff's investigation were presented to the district court, but the underlying research was not presented. Essentially, therefore, the plaintiff in *Smart Study* used a two-step approach for its address research – an address search and a review of Chinese government company information. Based on the plaintiff's inability to verify the addresses of 49 of the defendants, the district court concluded that their addresses were unknown and the Hague Convention accordingly did not apply. (21-cv-5860, ECF No. 111.) The Second Circuit did not disturb those findings on appeal.

Here, for every China-based Defendant, Wargo replicated the two-step approach from *Smart Study* but conducted a more extensive investigation in each step. The investigation was carried out by Yanling Jiang, a US-licensed attorney who is fluent in Mandarin and has submitted requests for service of process under the Hague Convention to China's Central Authority. (*Declaration of Yanling Jiang* (the "*Jiang Dec.*") at ¶ 1.) Ms. Jiang's investigation in this case follows the approach she has used in other Schedule A cases and courts have found sufficient to show that a Chinese defendant's address is unknown under the Hague Convention. *See The Art Gallery of Billy Jacobs, Ltd. v. The Partnerships & Unincorporated Associations Identified on Schedule A*, No. 26-cv-2097 ECF Nos. 33, 37, 37-1, 42 (N.D. Ill. Sept. 15, 2026) (entering default judgment after a supplemental submission and Jiang declaration addressing service, ECF Nos. 37, 37-1); *Lorenza Scarsi v. The Partnerships & Unincorporated Associations Identified on Schedule A*, No. 1:26-cv-05508, ECF Nos. 33, 33-1, 34–35 (N.D. Ill. July 8, 2026) (holding the Hague Convention inapplicable and granting electronic service based on a Jiang declaration).

With respect to the address search, Ms. Jiang took the address exactly as the Defendant itself disclosed to the marketplace and searched it on (1) Google, (2) Google Maps, (3) Baidu, (4) Baidu Maps, and (5) Amap, capturing the marketplace page from which the address was taken and the resulting maps screens. (*Jiang Dec.* at ¶ 7; Ex. A.) Baidu Maps is one of China's most popular and widely used mapping services. (*See* https://www.chinafy.com/china-tech/what-is-baidu-maps-and-how-to-get-started, last visited November 6, 2026.) It was developed specifically for the Chinese market and is often dubbed the "Google Maps of China." (*Id.*) Amap is China's most widely used digital mapping, navigation, and location-based services app, and is owned by the Alibaba Group. (*See* https://www.alibabagroup.com/en-US/about-alibaba-businesses-1747844658454593536, last visited November 6, 2026.) Wargo thus searched each Defendant's addresses in *five searches—two web search engines (Google and Baidu) and three map applications (Google Maps, Baidu Maps and Amap)—including Baidu, the search engine used in Smart Study*. Where the platform disclosed no address below the country level, there was no address to search. (Jiang Dec. at ¶ 7.)

For the second step in the process—the searching of Chinese business registration records, Ms. Jiang checked each Defendant against Tianyancha, the Chinese corporate-registry database, using the verbatim business name the Defendant itself disclosed to the marketplace. (*Jiang Dec.* ¶ 8; Ex. A.) Although QiChaCha was used in Smart Study, Ms. Jiang used Tianyancha, where she holds an account; in her experience, Tianyancha generally displays a company's basic registration record without an account, while QiChaCha generally does not display one unless the user is logged in. (Id. at ¶ 8.) Tianyancha is China's leading enterprise information platform and QiChaCha is its primary competitor. (https://www.businessdataguide.com/blog/jurisdictions/china-company-search-guide , last visited

Nov. 16, 2026.) Ms. Jiang also checked certain matched entities in the official National Enterprise Credit Information Publicity System. (Id. at ¶ 8.) Ms. Jiang personally read all Chinese-language records. (*Id.*) Using these resources, Ms. Jiang was able to confirm the address of 20 of the Defendants. (Id. at ¶ 12.)

For the remaining 248 China-based Defendants, Ms. Jiang grouped the defendants into one of eight groups: (A) the registered entity matching the disclosed name is cancelled or revoked (47 defendants); (B) a government record describes the address as unreliable (1 defendant); (C) the matched entity is registered at a hosted, cluster or declared address (19 defendants); (D) more than one registered entity could be the defendant (8 defendants); (E) Tianyancha returned a registered entity whose registered address and the disclosed address are different places (18 defendants); (F) Tianyancha returned no entity matching the disclosed name (81 defendants); (G) the platform discloses no street address (58 defendants); and (H) a registered entity matches the address at street level, but the address cannot be tied to a unit (16 defendants). (Id. at ¶ 13.) Ms. Jiang's declaration discusses the research she performed for one Defendant in each group as an example for the Defendants in each of these groups. Exhibit A to Ms. Jiang's declaration provides a Defendant-by-Defendant summary of Ms. Jiang's conclusions.

Each group reflects a specific reason why Ms. Jiang's investigation did not produce an address at which China's Central Authority could serve the Defendant. The question under Article 1 of the Hague Convention is not whether some address can be found, but whether reasonably diligent efforts have produced an address that can be verified as the Defendant's own. (Jiang Dec. ¶ 2.) Each of these groups will now be discussed.

*Group A (cancelled or revoked entity).* For these 47 Defendants, the registered entity or entities matching the name the Defendant disclosed to the marketplace have been cancelled or

have had their business licenses revoked. A cancelled or revoked entity no longer exists at its registered address, so there is no entity there for China's Central Authority to serve, and the storefront is operating under the name of a company that no longer exists. That registered address therefore cannot be treated as the Defendant's known address. (Jiang Dec. ¶ 14.)

*Group B (address flagged by a government record).* For this Defendant, a Chinese government record itself states that the registered entity cannot be reached at its registered address. When the government's own record says the entity is not at that address, the address is not one at which the Defendant can be served. (Jiang Dec. ¶ 18.)

*Group C (hosted, cluster or declared address).* For these 19 Defendants, the matched entity's registered address line itself shows a hosted, cluster, shared or self-declared registration. Such an address shows where an entity is registered, not where the business operates, and service sent there would not be directed to the Defendant. (Jiang Dec. ¶ 20.)

*Group D (more than one possible entity).* For these eight Defendants, more than one registered entity could be the Defendant, and nothing in the marketplace record or the registry identifies which one operates the storefront. Choosing among them would be a guess, and an address that belongs to one of several candidates is not a known address for the Defendant. (Jiang Dec. ¶ 24.)

*Group E (registered address differs from disclosed address).* For these 18 Defendants, Tianyancha returned a registered entity bearing the Defendant's name, but at a place different from the address the Defendant gave the marketplace. The Defendant's own disclosed address did not verify, and nothing in the record ties the registered address to the storefront. (Jiang Dec. ¶ 28.)

*Group F (no matching entity).* For these 81 Defendants, Tianyancha returned no registered entity matching the name the Defendant disclosed, and none of the map or web searches resolved the disclosed address to a place connected to the Defendant. With no registered entity and no verifiable location, there is no address at which the Defendant could be served. (Jiang Dec. ¶ 32.)

*Group G (no street address).* For these 58 Defendants, the address the platform displays states no street address: it states only the country, or only a province, city or district. With no street address disclosed, there is no address that could be verified or at which the Defendant could be served. (Jiang Dec. ¶ 36.)

*Group H (street-level match only).* For these 16 Defendants, a registered entity matches the disclosed address at the street level, but the address cannot be tied to a particular unit. A street address for a multi-unit building, without the unit, does not identify where the Defendant can be found and is not an address at which service can be completed. (Jiang Dec. ¶ 40.)

Wargo recognizes that groups E and H present the closest questions, because each involves a registered address that matches the Defendant in part. Should the Court disagree as to the Defendants in either group, Wargo will attempt to serve those Defendants under the Hague Convention.

To assist the Court, attached hereto as Exhibit 1 is an example of the research Ms. Jiang performed in step one–the address research–for Defendant No. 43. This exhibit shows the address displayed by Amazon, the results of the Google web search, the results of the Google maps search, the results of the Baidu web search, the results of the Baidu maps search, and the results of the Amap search. The investigator has retained the search results for each Defendant. (Id. at ¶ 7.) Should the Court wish to review the search results for each Defendant, Wargo would

be pleased to provide them. Defendant No. 43 is one of the Defendants the investigator has placed into category F (no matching entity). Ms. Jiang thus concluded that the address of Defendant No. 43 is unknown as the investigation did not identify an address where service of process could be made by China's Central Authority.

Wargo's investigation determined that addresses for 20 China-based defendants are known. These defendants are Def. Nos. 13, 17, 22, 31, 34, 36, 41, 53, 59, 70, 72, 90, 135, 151, 152, 169, 176, 223, 230, and 242. (Jiang Dec. at ¶ 12.) Therefore, Wargo makes no request for alternative service on these defendants and will effectuate service upon them in accordance with the Hague Service Convention.

**2.Alternate Service is Permissible as to The Defendants Located in Hong Kong.**

Defendant Nos. 88, 91, 110, 112, 120, 136, 137, 139, 140, 141, 146, 150, 153, 155, 156, 157, 165, 168, 175, 256, 285, 291, 293, 296, 302, 304, 306, 315, 318, 321, 324, 325, 333, 337, 340, 341, 342, 344, 346, 347, 348, 350, 351, 352, 354, 361, 363, 364, 366, 368, 370, 371, 372, 373, 374, 375, and 380 appear to be located in Hong Kong. (Jiang Dec. at ¶ 44.) China's declaration objecting to service under Article 10(a) does not extend to Hong Kong, which has made its own declarations under the Convention and has not objected to service through postal channels. See https://www.hcch.net/en/instruments/conventions/status-table (last visited Nov. 20, 2026). The Smart Study holding rested on China's Article 10(a) objection and therefore does not reach these 57 Defendants. See also Fox Shiver, LLC v. The Individuals, et al., 2023 WL 4373308, at *2 (S.D.N.Y. Apr. 25, 2023) (holding that "service on Defendants in [Vietnam and Hong Kong] via electronic means is permissible and reasonably calculated to result in proper notice to Defendants"). Wargo therefore requests leave to serve these 57 Defendants by email.

## CONCLUSION

For the reasons stated above, Wargo respectfully requests that the Court grant his renewed motion for alternative service and deem service to have been made on these Defendants. A proposed Order granting the requested relief is submitted herewith.

Respectfully submitted,

Dated: November 20, 2026

/s/ Stanley D. Ference III

Stanley D. Ference III
Pa. ID No. 59899
courts@ferencelaw.com

FERENCE & ASSOCIATES LLC
409 Broad Street
Pittsburgh, Pennsylvania 15143
(412) 741-8400 – Telephone
(412) 741-9292 – Facsimile

Attorneys for Plaintiff